IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

AMERIS BANK, as assignee of      *
the Federal Deposit Insurance    *
Corporation, receiver for        *
Darby Bank and Trust Co.,        *
                                 *
         Plaintiff,              *
                                 *
    v.                           *     CV 614-002
                                 *
IRA RUSSACK,                     *
                                 *
         Defendant.              *

O R D E R

Plaintiff Ameris Bank ("Ameris") seeks enforcement of five personal guaranties allegedly executed by Defendant Ira Russack. The Court **DENIES** Mr. Russack's motion for oral argument (doc. 63.) and **GRANTS IN PART** and **DENIES IN PART** Ameris's motion for summary judgment (doc. 56) because Mr. Russack denies signing four of the five personal guaranties, and a jury must determine whether he did. Summary judgment is appropriate only with respect to the limited guaranty that Mr. Russack admits signing but contests on other, inadequate bases.

I.   FACTUAL BACKGROUND

In late 2003, Mr. Russack formed a business with R. Richard Yates to engage in real estate acquisition, development, management, and sale in Florida and South Georgia. (Doc. 62-1,

"Russack Decl.," ¶ 3.) In 2004, Mr. Russack purchased tracts for development in Florida and Georgia and became interested in modular homes manufactured by Crossroads Homes, Inc. ("Crossroads"), a financially troubled company owned by Terry Kelly.

Crossroads had a line of credit with Darby Bank ("Darby") secured by the modular home factory and three residences. (Russack Decl. ¶ 9.) Because Crossroads was delinquent and the properties were in danger of foreclosure, Mr. Yates formed G.T.O.T. LLC ("GTOT") in late 2004 to provide adequate capital to keep Crossroads afloat. (Yates Aff. ¶ 12.) GTOT also purchased property in Bluffton, South Carolina from Darby. (Doc. 57, ¶ 4.)

GTOT currently has five outstanding loans in default: (1) Note 2620, balance $962,689, created to consolidate Note 5870, "First Loan," Note 4250 "Lizella Loan," and Note 0220 "GTOT Credit Line"; (2) Note 0240, "Olde Town Loan," balance $3,750,000; (3) Note 0230, "Crossroads Loan," balance $1,960,327; (4) Note 6620, balance $125,312; and (5) Note 6270, balance $308,428. (Doc. 62, pp. 2-3; doc. 56, pp. 5-7; doc. 56-1, p. 45.) GTOT owes a total of $6,712,063.75 under the loans as of June 30, 2015. (Doc. 57, ¶ 19.) The fourth and fifth loans listed above, Notes 6270 and 6620, are referred to

2

collectively as the "2008 Loans."

The Georgia Department of Banking and Finance ("GDBF") closed Darby on November 12, 2010, and appointed the Federal Deposit Insurance Corporation ("FDIC-R") as receiver. (Id.) The FDIC-R assigned all rights and assets of Darby to Ameris. (Id. ¶ 7.)

Ameris alleges Mr. Russack signed five guaranty agreements subjecting him to personal liability for all five of GTOT's defaulted loans, as follows: (1) an unlimited guaranty dated March 16, 2004, and signed in Macon, Georgia in relation to Note 5870 ("First Unlimited Guaranty"); (2) two unlimited guaranties dated April 21, 2005, allegedly sent and received from Mr. Russack by mail in relation to renewal of the First Loan and the Lizella Loan ("Second and Third Unlimited Guaranties"); (3) a limited guaranty dated August 26, 2004, signed in Tallahassee, Florida in relation to Note 0230 ("Crossroads Limited Guaranty"); and (4) a limited guaranty dated August 26, 2004, and signed in Tallahassee in relation to Note 0240 ,("Olde Town Limited Guaranty"). (Doc. no. 56-1, Exs. 2, 3, 6, 11, 13.)

The unlimited guaranties obligate Mr. Russack for 100% of the balance for both the loan referenced in the guaranty and any future loans made by Darby to GTOT. (Id. Exs. 2, 3, 6.) The limited guaranties obligate Mr. Russack for only ten percent of

3

the balance for the specified loan, but the limited guaranties also expressly state they are cumulative to obligations Mr. Russack may have under any other guaranties in existence, including unlimited guaranties covering 100% of the balances on future loans. (Id., Exs. 11, 13.)

In his declaration, Mr. Russack admits to signing the Crossroads Limited Guaranty, obligating him for ten percent of the $1.96 million loan balance. (Russack Decl. ¶ 15.) Mr. Russack has denied signing the four remaining guarantees. (Id. ¶ 16.) At his deposition on April 15, 2015, Mr. Russack denied signing the First Unlimited Guaranty on March 16, 2004, at the office of James Emory Company in Macon, Georgia, and denied ever setting foot in Macon, Georgia. (Doc. 62-3, "Russack Dep.," pp. 11-16.)

Ms. Bobbie Reddell, the notary public to the alleged signing and an employee of James Emory Company in Macon, has no recollection of ever meeting Mr. Russack. (Doc. 62-10, "Reddell Dep.," pp. 9-13.) Ms. Kim Lewis, a witness to the guaranty, has no recollection of the transaction or meeting Mr. Russack in Macon on that day. (Doc. 62-11, "Lewis Dep.," pp. 4-6.) Mr. Garner, a former Darby officer, testified the unlimited guaranty would have been executed contemporaneously with the loan documents, but the loan documents were executed in Tallahassee,

4

Florida and not Macon. (Doc. 62-5, "Garner Dep.," pp. 44-45.)

As to the Second and Third Unlimited Guaranties executed on April 21, 2005, Mr. Russack denies any knowledge of their existence. (Russack Dep., p.15.) Mr. Russack maintains that, had he known of an unlimited guaranty purporting to subject him to an unlimited amount of GTOT's debt, he would not have signed the document. (Russack Dep. 21.) Mr. Yates testified by affidavit that GTOT would not have agreed to any loan unless Mr. Russack's guaranty was limited to ten percent. (Doc. 17-1, "Yates Aff.," p. 23.) Mr. Russack also denies signing the Olde Town Limited Guaranty. (Russack Decl. ¶ 16.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." United States v. Four Parcels of Real Prop.,

5

941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp., 477 U.S. at 323). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).

### III. DISCUSSION

**A. Disputed Issues of Material Fact Preclude Summary Judgment on All Three Unlimited Guaranties and the Olde Town Limited Guaranty.**

Because Mr. Russack adamantly denies signing four of the

7

guaranties, a jury must determine whether he did. Under Georgia law,[1] a signature is "presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature." O.C.G.A § 11-3-308. This presumption of authenticity may be rebutted at trial where "the purported maker denies both knowledge and signature and produces other evidence separate from the sworn denial of execution in support of the defense of forgery, and there exist irregularities on the face of the negotiable instrument that would place a reasonable person on notice under a reasonable commercial standard." Southtrust Bank of Georgia v. Parker, 486 S.E.2d 402, 405 (Ga. Ct. App. 1997) (citing Fabe v. Floyd, 405 S.E.2d 265 (Ga. App. 1991)). However, at the summary judgment stage, only a sworn denial of execution by the obligor is required to create a genuine issue of material fact for trial. See Lee v. SunTrust Bank, 722 S.E.2d 884, 885 (Ga. Ct. App. 2012) (denying summary judgment where plaintiff submitted affidavit denying execution of instrument).

Here, Mr. Russack unequivocally denies knowledge of, or that he signed, the First Unlimited Guaranty. (Russack Dep. 11-

---

[1] The guaranties specify that Georgia law applies and neither parties disputes that it applies.

16.) Mr. Russack adamantly denies being in Macon, Georgia on March 16, 2004, the date and location of execution. (Russack Decl. ¶ 27.) For further support, Mr. Russack has presented deposition testimony of a notary and a witness to the March 16, 2004 signing, both of whom do not recall the transaction and do not recall ever meeting Mr. Russack. (Reddell Dep. 9-13; Lewis Dep. 4-6.)

Ms. Reddell testified the signing "would have been out of the ordinary," and she cannot recall whether she checked the signer's driver's license or other form of identification. (Reddell Dep. 9, 13.) Ms. Lewis likewise denied it was customary practice to verify the identity of signers, and stated she was unable to discern whether Mr. Russack signed the First Unlimited Guaranty or whether another individual signed for Mr. Russack. (Lewis Dep. 9.) Mr. Garner, a former Darby loan officer, testified the guaranty would likely have been executed simultaneously with the other loan documents, but those were executed in Tallahassee and not in Macon. (Doc. 62-5, "Garner Dep.," pp. 44-45.)

Ameris points out that Mr. Russack denied in his deposition signing the Second and Third Unlimited Guaranties and Olde Town

Guaranty.² (Doc. 56, p. 14.) The parties filed the deposition excerpt containing Mr. Russack's denial of the First Unlimited Guaranty, but not the remaining three. (See doc. 56-17.) However, Mr. Russack testified by affidavit that, to his knowledge, he did not sign any of these four guaranties. (Russack Decl. ¶ 16.) While a sworn denial is not sufficient to rebut the presumption at trial, it is sufficient under Georgia law to create a genuine issue of material fact at summary judgment. See Lee, 722 S.E.2d at 885.

Ameris argues this testimony is a sham designed to defeat summary judgment because Mr. Russack previously answered in a request for admission and in an interrogatory that he was without sufficient knowledge to admit or deny whether he signed these four guaranties. (Doc. 56, p. 13; Pl.'s Ex. I, Nos. 3-6.) The sham affidavit rule allows a court to disregard an affidavit as a sham when it contradicts, without explanation, prior deposition testimony on a material fact. Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir.

---

² Oddly, Mr. Russack's counsel fails to discuss the validity of the second and third unlimited guaranties in the briefs and even seems to admit their execution despite Mr. Russack's deposition testimony to the contrary. (Doc. 62, p. 7.) ("Despite Russack having allegedly already executed a guaranty covering the First Loan, Darby Bank requested that he execute the Second Unlimited Guaranty in April 2005 together with a renewal of the First Loan, and that he execute the Third Unlimited Guaranty in conjunction with a renewal of the Lizella loan, **which he did.**")

1984). The sham affidavit rule is applied sparingly, <u>Latimer v. Roaring Toyz, Inc.</u>, 601 F.3d 1224, 1237 (11th Cir. 2010), and only when "[t]he earlier deposition testimony . . . consist[s] of clear answers to unambiguous questions which negate the existence of any genuine issue of material fact," <u>Lane v. Celotex Corp.</u>, 782 F.2d 1526, 1532 (11th Cir. 1986) (quotations omitted). An inherent inconsistency must exist between an affidavit and the deposition before the affidavit can be disregarded. <u>Tippens v. Celotex Corp.</u>, 805 F.2d 949, 954 (11th Cir. 1986).

Here, the sham affidavit rule does not apply because there is no inherent inconsistency between the interrogatory and request for admission when compared with the later deposition and affidavit testimony. Mr. Russack, in his interrogatory, stated he could not recall at that time whether he signed the four guaranties at issue. In his later affidavit and at his deposition, he denied executing the guaranties. Perhaps discovery in the case refreshed his recollection. Such a direct conflict would exist only if he admitted in the written discovery responses that he signed the guaranties, only to say the opposite during his deposition and in his affidavit.

In addition, the sham affidavit rule as espoused in <u>Van T. Junkins & Assocs., Inc.</u>, 736 F.2d at 657, only applies to

11

affidavits that attempt to change prior deposition testimony, not deposition testimony that provides detailed information after an interrogatory response claiming no recollection. Ameris has failed to point out any decision applying the rule in this context, and for good reason. (See doc. 56, pp. 14-16.) The rule recognizes the diminution in utility of summary judgment that would inevitably follow if parties could defeat summary judgment by submitting affidavits that contradict testimony elicited during a lengthy in-person deposition. See Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969) (disregarding contradictory affidavit submitted after four days of deposition); Tippens, 805 F.2d at 953 (finding sham affidavit so suspect of untruthfulness as to be disregard as matter of law). Obviously, this is not a concern here because the sworn denial of execution occurred during the deposition, which gave opposing counsel a full opportunity to ask follow-up questions and explore the ways in which Mr. Russack refreshed the recollection that was so hazy at the time of his interrogatory and request for admission responses.

In sum, the sham affidavit rule does not apply, and summary judgment is inappropriate under Georgia law because Mr. Russack has denied in sworn statements that he signed the four guaranties.

B.  **It is Undisputed that Mr. Russack Signed the Crossroads Limited Guaranty, and Georgia Law Requires Rejection of His Arguments Regarding Consideration, Mutual Assent, and Fraud, Entitling Ameris to Summary Judgment on this Guaranty.**

Mr. Russack admits he signed the Crossroads Limited Guaranty for ten percent of the $1.96 million loan balance, but he nevertheless attempts to avoid liability by alleging failure of consideration, fraud in the inducement, and lack of mutual assent. All three arguments fail as a matter of Georgia law.

Mr. Russack argues the guaranty fails for lack of consideration because the benefits only flowed to GTOT as borrower. The argument ignores the guaranty's status as a contract under seal, created by the word "seal" appearing after Mr. Russack's signature and the proclamation that "this guaranty is given under seal and it is intended that this guaranty is and shall constitute and have the effect of a sealed instrument according to law." (Doc. 56-1, p. 65.) See Perkins v. M & M Office Holdings, LLC, 695 S.E.2d 82, 84 (Ga. Ct. App. 2010) (requiring recital of intention to seal and word "seal" printed by signatures). Accordingly, any nominal consideration recited is sufficient as a matter of law. Autrey v. UAP/GA AG Chem, Inc., 497 S.E.2d 402, 405 (Ga. Ct. App. 1998). The guaranty recites nominal consideration of five dollars to be given to Mr. Russack, which is sufficient as a matter of law even if five

dollars never actually changed hands. Jolles v. Wittenberg, 253 S.E.2d 203, 205 (Ga. Ct. App. 1979). Furthermore, Mr. Russack, in citing Georgia case law predating the Uniform Commercial Code, overlooks the merger of sureties and guarantees and that the loan flowing to GTOT serves as adequate consideration to Mr. Russack for his limited guaranty. See Helton v. Jasper Banking Co., 715 S.E.2d 765, 767 (Ga. Ct. App. 2011).

Turning his attention to whether Darby received any consideration for this guaranty, Mr. Russack argues it did not because he had already signed an unlimited guaranty covering all future GTOT loans with Darby. The Crossroads Limited Guaranty was thus redundant, served no purpose, and offered no additional benefit to the bank. Of course, the Crossroads Limited Guaranty certainly does serve a useful purpose here if Mr. Russack succeeds in convincing a jury that he never signed the First, Second, and Third Unlimited Guaranties. In addition, the limited guaranty served to protect the bank in the event Mr. Russack exercised his right to revoke the unlimited guaranties. (See doc. 56-1, Ex. 2.) ("This Guaranty will continue to bind Guarantor for all indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions, or modification of the indebtedness.") Thus, consideration

14

exists because Mr. Russack was incurring an independent legal obligation, separate from his obligations under the unlimited guaranties.

Mr. Russack's fraud argument is also without merit. He contends the bank unfairly confused and misled him by having him sign the Crossroads Limited Guaranty when he had already executed the unlimited guaranties covering 100% of the Crossroads loan balance, a fact he now denies. Mr. Russack could have avoided his confusion by reading the Crossroads Limited Guaranty, which provides that "Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties." (Doc. 56-1., Ex. 11.) Failure to read the plain language of a contract does not constitute fraud. Parrish v. Jackson W. Jones, P.C., 629 S.E.2d 468, 471 (Ga. Ct. App. 2006).

Undeterred, Mr. Russack argues Darby had a duty to remind him the unlimited guaranties applied to future loans such that they also covered the Crossroads loan. There is no confidential relationship between a bank and its customer that would give rise to such a duty to remind Mr. Russack of the prior unlimited guaranties. Lilliston v. Regions Bank, 653 S.E.2d 306, 309 (Ga. Ct. App. 2007); O.C.G.A. § 23-2-53. In addition, fraud by concealment only applies to a fact unknown by the claimant and

not easily discoverable. Hanlon v. Thornton, 462 S.E.2d 154, 157 (Ga. Ct. App. 1995) (person claiming fraudulent concealment must show the "defect could not have been discovered by the buyer in the exercise of due diligence"). Clearly, that does not apply here if a jury determines Mr. Russack did, in fact, sign the unlimited guaranties. If a jury finds that he did not, the current argument regarding fraud is moot.

Mr. Russack also argues there was no mutual assent due to his confusion concerning whether his liability was for 100% of the loan balance or only ten percent. (Doc. 62, p. 18.) The plain language of the Crossroads Limited Guaranty informed Mr. Russack he was liable for ten percent of the loan balance, in addition to any liability under any other existing guaranties. Messrs. Russack and Yates testify to a different understanding, but that understanding conflicts with the plain language of the guaranty. (See Yates Aff. ¶ 39; doc. 62, pp. 6-7.) By affixing his signature to a document with unambiguous language as to his liability, Mr. Russack manifested mutual assent to that agreement.

The Crossroads Limited Guaranty provides that Ameris is entitled to recover all costs and expenses, including attorneys' fees, incurred in connection with enforcing its terms. Because the parties executed this guaranty in 2004, recovery of

attorneys' fees is governed by the version of O.C.G.A. § 13-1-11 existing at that time, before the 2011 amendments. This version of the statute provides, in pertinent part, as follows:

> Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectable as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity, subject to the following provisions . . . If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00

O.C.G.A. § 13-1-11. Under the plain language of this statute, Ameris is entitled to an award of $19,628.27, which is ten percent of Mr. Russack's obligation under the guaranty in addition to fifteen percent of the first $500.

Under the statute, Ameris is entitled to attorneys' fees if Russack is liable for the debt, and there is no right to petition for a reasonableness determination of the fixed fee amount. (Doc. 68, pp. 21-23; Doc. 70, p. 8.) Mr. Russack argues the guaranty trumps the statutory mandate by providing for the recovery of all attorney's fees rather than reasonable attorneys' fees. The Georgia Court of Appeals has addressed this very argument and correctly found it lacking. Best v. CB

Decatur Court, LLC, 750 S.E.2d 716, 720 (Ga. Ct. App. 2013). Thus, Ameris is entitled to attorneys' fees in the amount of $19,628.27

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Mr. Russack's motion for oral argument (doc. 63.) and **GRANTS IN PART** and **DENIES IN PART** Ameris's motion for summary judgment (doc. 56).

SO ORDERED this 31ST day of March, 2016, at Augusta, Georgia.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA